H. R. MACMILLAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6602.   Promulgated January 17, 1929.

*A. Calder Mackay, Esq.*, for the petitioner.
*C. H. Curl, Esq.*, for the respondent.

1368

OPINION.

MARQUETTE: There are five assignments of error in this proceeding, four being connected with one transaction. The other, which relates to petitioner's alleged loss on mining stock, we will dispose of first.

The petitioner, in 1907, acquired 1,700 shares of Little Belle Mining Co. stock at a cost of $17,000. Prior to March 1, 1913, the mine had ceased operations and it continued inoperative until 1922, when the company went into the hands of a receiver and the stock became worthless. There was no active market for the stock on March 1, 1913, but there was a bid and asked price of 25 cents per share on the exchange at that date. The petitioner claims that he sustained a loss on this stock in 1922 in the amount of $17,000, which is deductible in computing his net income for that year. The respondent has allowed a deduction computed at the rate of 25 cents per share on 17,000 shares, or a total of $425. The only competent evidence before us as to the March 1, 1913, value of the shares of stock in question is the bid and asked price on the exchange, and on the record we can only affirm the respondent's determination that the deductible loss was $425.

The four other assignments of error relate to certain deductions set forth in the findings of fact, which the petitioner claimed as ordinary and necessary business expenses connected with the Nevada land transaction. The first item is the amount which the petitioner expended in organizing the Clark County Investment Co. The amount so expended must be considered as an expense of the corporation and not of the petitioner, and it is a capital expenditure and not an ordinary and necessary business expense. As far as the petitioner is concerned, he either advanced this amount of money for and on behalf of the corporation and became its creditor to that extent, or he contributed it as paid-in capital. In either event it was not an ordinary and necessary business expense to him. We find no error in the determination of the respondent on this point.

The petitioner also claims deductions as necessary expenses of amounts totaling $7,229.33, which he expended in 1922 in removing certain liens and paying certain bills which stood against the ranch. Repayments of these amounts was promised by Wooley, the petitioner's client. These expenditures, therefore, were, and were doubtless considered at the time merely advances made either to Wooley or to the Nevada corporation. For the purpose of this proceeding it makes no difference which one was the debtor. While the expenditures may have had the effect of protecting the security for the petitioner's large fee due from Wooley and the Great Basin Sugar Co.,

they were, nevertheless, loans by him which were to be repaid, and did not constitute ordinary and necessary business expenses in any trade or business. We sustain the respondent's determination on this point.

The next item is the amount of $59,558.10 which the petitioner claims as a deduction as an ordinary and necessary business expense on account of the purchase of the DeRekowsky judgment. The evidence shows that DeRekowsky had obtained a judgment against the Great Basin Sugar Co. in the amount of $50,000, together with interest and costs, and was threatening suit to set aside the transfer of the Nevada land and subjecting it to the payment of the judgment. The petitioner, in order to avoid litigation, and to protect the security for his fee, purchased the judgment for $59,558.10. He was also influenced in purchasing the judgment by the belief that he could uncover other assets of the Great Basin Sugar Co. which would be subject to the judgment. Whether DeRekowsky could have set aside the transfer of the Nevada lands we do not know. However, the petitioner apparently thought that there was at least a possibility that he could. If the judgment could have been enforced by DeRekowsky against the Nevada land, the value of the petitioner's security would have been reduced by that amount. The petitioner was, therefore, purchasing, in order to protect himself, the value of what he thought DeRekowsky might recover. This is not, in our opinion, an ordinary and necessary expense but is more in the nature of a capital expenditure, the gain or loss from which can not be determined until the petitioner forecloses on the stock which he holds as security and determines how much will be realized therefrom. They are so closely connected that they can not be separated, one from the other. We hold that the petitioner is not entitled to any deduction in 1922 on account of this item.

The petitioner also claims a deduction as an ordinary and necessary business expense for the year 1922, the amount of $3,176.41, which he expended in his efforts to collect the judgment above discussed. This deduction was disallowed by the respondent on the ground that it was a capital expenditure. We can not agree with this theory of the respondent. The amount in question was made up of court costs and other expenses incident to proceedings for the discovery of property subject to execution. It was an expense, not a capital expenditure. It was not a personal expense, but one incident to the petitioner's business affairs and as such it should have been allowed as a deduction in 1922. See *Kornhauser* v. *United States*, 276 U. S. 145. We think the principle there announced is applicable here.

*Judgment will be entered under Rule 50.*