Francis H. Monek and Carol L. Monek v. Commissioner. Martin K. Henslee and Mary Ann Henslee v. Commissioner.
Monek v. Commissioner
Docket Nos. 3122-63, 3123-63.
United States Tax Court
T.C. Memo 1966-110; 1966 Tax Ct. Memo LEXIS 176; 25 T.C.M. (CCH) 582; T.C.M. (RIA) 66110; May 25, 1966
*176 Held, that amounts paid by each of two law firms to their clients, to provide for the personal living expenses of such clients while their cases were awaiting trial in the courts, and of which a substantial portion was actually repaid by the clients when their cases were settled or otherwise disposed of, are not deductible by said firms as ordinary and necessary business expenses under section 162, I.R.C. 1954. Warren Burnett, 42 T.C. 9, affirmed on this point 356 F. 2d 755 (C.A. 5), followed. Held further, that each of said law firms was a "partnership" for Federal income tax purposes, within the meaning of section 761(a) of the 1954 Code; and that by reason of the disallowance of the above-mentioned deductions, the individual taxable incomes of each of two petitioners herein who was a partner in one or both of said partnerships, should be adjusted to reflect his distributive share of the correct ordinary net income or loss of each of said partnerships of which he was a partner. William A. Barnett and George D. Crowley, 135 S. La Salle St., Chicago, Ill., for the petitioners. Nelson E. Shafer, for the respondent. PIERCE Memorandum Opinion PIERCE, Judge: The respondent determined deficiencies in the income taxes of the above-named petitioners, as follows: Taxable
Docket
year
No.
Petitioner
Deficiency
1959
3122-63
Francis H. Monek and Carol L. Monek
$22,849.30
1959
3123-63
Martin K. Henslee and Mary Ann Henslee
32,154.44 The cases were consolidated for trial. *178 The issues for decision are: (1) Where petitioners Martin K. Henslee and Francis H. Monek together with a third individual named Walter N. Murray (all of whom were lawyers) engaged in handling certain legal claims and litigation during the year 1959 under the name of "Henslee, Monek & Murray," and computed and reported both the aggregate net income of said firm and also the partners' distributive shares thereof on a U.S. Partnership Return of Income for said year; and similarly, where said petitioner Martin K. Henslee and his brother Edward B. Henslee, Jr. (who also was a lawyer) engaged in handling certain other legal claims and litigation during the year 1959 under the name of "Henslee and Henslee," and computed and reported both the net loss of said partnership and also the partners' distributive shares thereof on a U.S. Partnership Return of Income for said year - is each of the foregoing partnerships entitled to deduct from the gross income reported on its said partnership return, as an ordinary and necessary business expense within the meaning of section 162(a) of the 1954 Code, amounts that it paid out to clients during said year for living and sustenance expenses of such *179 clients while their cases were on trial in the courts even though most of said amounts would be recovered from the clients upon settlement of their cases? (2) If it is decided that the above-mentioned deductions claimed on said partnership returns are not allowable under section 162(a) of the 1954 Code - should the individual taxable incomes of petitioners Martin K. Henslee and Francis H. Monek which they reported on joint returns with their wives, be adjusted to reflect the increased amounts of their respective distributive shares of partnership income and loss from "Henslee, Monek & Murray" and "Henslee and Henslee" which will result from the disallowance of the claimed partnership deductions above mentioned? All other issues raised by the petitioners in their pleadings were abandoned by them in paragraph 14 of the stipulation of facts filed herein. I. All of the facts of said consolidated cases have been stipulated, and they are so found. The stipulation of facts as amended, and all exhibits identified therein, are incorporated herein by reference. A summary of the facts so stipulated and found, to the extent that they are here pertinent and material, is as follows: Petitioners *180 Francis H. Monek and Carol L. Monek are husband and wife, residing in Lake Forest, Illinois; and petitioners Martin K. Henslee and Mary Ann Henslee are husband and wife, residing in Evanston, Illinois. Each of these couples filed, on the cash receipts and disbursements basis, a joint Federal income tax return for their taxable calendar year 1959 here involved, with the district director of internal revenue at Chicago. The wives above mentioned are parties to this case solely by reason of having joined in the filing of said joint returns. For several years prior to 1959, Edward B. Henslee, Sr. (who died prior to the taxable year involved, and who is hereinafter called "Henslee, Sr.") had engaged, individually and not as a partner, in the practice of law in Chicago. He had specialized in the handling of personal injury claims and cases against railroads, that were filed on behalf of injured employees of such railroads. He was retained to handle such claims and cases under written retainer contracts which he personally entered into with such injured employees. The periods of service required for handling cases of this character ranged from 6 months to 6 years, with the average period *181 being approximately 2 1/2 years. Most of the cases were disposed of by settlement without trial; and approximately 99 percent of the clients continued to be represented by said Henslee, Sr. and his employees, or by his successors after his death, until final settlement or other disposition of their claims. On February 1, 1947, said Henslee, Sr. entered into a written agreement with petitioner Francis H. Monek and another individual named Walter N. Murray, both of whom were lawyers that he had employed for several years in his law practice. The provisions of this agreement, to the extent here pertinent, were in substance: 1. That each of said employees would thereafter continue to devote his entire time and attention to the law business of Henslee, Sr.; and that each would thereafter be paid by him, as compensation for such services, 12 1/2 percent of the net annual profits of said business in lieu of the salaries which they had therefore been receiving. 2. That said law business of Henslee, Sr. would thereafter be conducted under the name of Henslee, Monek & Murray; but that the expenses and manner and methods of conducting said business would remain entirely within the control *182 and discretion of Henslee, Sr., and that the new name adopted for such business would in no manner be construed as designating a partnership. 3. That in the event of Henslee, Sr.'s death, Monek and Murray would finish and complete any and all business remaining in the decedent's office; and that after deducting the expenses of such continued business, they would pay 50 percent of the net income therefrom to the personal representative of Henslee, Sr., and would each receive for himself 25 percent of the net profits of all business handled after Henslee, Sr.'s death. 4. That the agreement would remain in force and effect at the pleasure of the parties thereto; but that it might be terminated any time at the option of any of the parties. Financial assistance was supplied to about 80 percent of the clients of Henslee, Sr.'s above-mentioned legal practice; and the amounts so paid out to clients were treated, at least for the year 1958, as accounts receivable and were not deducted from gross income. Approximately 98 percent of the aforesaid financial assistance payments was eventually recovered. Henslee, Sr. died testate on November 22, 1958. Thereupon, Walter N. Murray became *183 the executor of said decedent's last will and testament; and he continued to so act until his own death on March 10, 1960. Under said last will and testament, the decedent's equity in all pending cases arising out of his law practice was specifically bequeathed to one of his sons, petitioner Martin K. Henslee; and the value of such equity was included in the decedent's estate for Federal estate tax purposes, and estate tax was paid in respect thereto. Also, the above-mentioned accounts receivable of the decedent, representing payments made to clients for financial assistance, were reported on Schedule F of said Federal estate tax return as an asset of his estate; and collections thereafter made on said accounts were paid over to decedent's executor. On or about April 13, 1960 (which was about 1 1/2 years subsequent to the death of Henslee, Sr.) a U.S. Partnership Return of Income (Form 1065) for the calendar year 1959, was filed on behalf of petitioner Martin K. Henslee and petitioner Francis H. Monek and Walter N. Murray, as attorneys operating under the name "Henslee, Monek & Murray." This reported partnership name was identical with that which the decedent Henslee, Sr. had used *184 in carrying on his individual practice from February 1, 1947 (the date of his above-mentioned agreement with his employees) until the time of his death. The law practice from which the reported partnership income shown on said partnership return was derived, and in respect of which the business expenses claimed as deductions on said return were incurred, was principally that of handling claims and litigation which had been pending and unsettled in the office of Henslee, Sr. at the time of his death. Said partnership return of "Henslee, Monek & Murray" stated that the date on which said reported partnership had commenced business was November 22, 1958 (being the date of Henslee, Sr.'s death). The return reported therein: Partnership gross income for the year 1959 in the amount of $597,003.19; total deductions claimed in the aggregate amount of $255,899.85; ordinary net income of the partnership in the amount of $242,385.82; and "Partners' Shares of Income, Credits, and Deductions," together with the amounts of the partners' "Withdrawals and distributions" and the amounts added to the partners' capital accounts, as follows: Withdrawa
ls
and
Added to
Distributive shares
distributions
capital
accounts
Martin K. Henslee
$121,192.90
(50%)
$120,796.60
$ 396.30
Francis H. Monek
60,596.46
(25%)
57,750.00
2,846.46
Walter N. Murray
60,596.46
(25%)
58,231.80
2,364.66
Totals
$242,385.82
(100%)
$236,778.40
$5,607.42
*185 Among the several deductions claimed on said partnership return of "Henslee, Monek & Murray," and to which effect was given in computing both the partnership net income and the partners' distributive shares thereof, was the following: Payments to clients for living and sustenance
costs while their cases are await-
ing trial in the courts. Any repayment of these
costs by the clients, upon
settlement of their cases, will be reported as
$147,264.86
income in the year of recovery The manner in which said amount of $147,264.86 had been handled and reflected on the accounts of said reporting partnership was this. During the year 1959 here involved, "Henslee, Monek & Murray" maintained a general ledger account on its books and records, entitled "Loans Receivable," in which were recorded all payments made to clients for living and sustenance costs, and also all recoveries received from clients in respect of such payments. The opening balance of said "Loans Receivable" account on January 1, 1959, was $14,935.75; and this balance reflected all such transactions occurring between November 22, 1958 (the date of the partnership's commencement of business, as reported on *186 its said partnership return) and December 31, 1958 (the close of its 1958 accounting year). Thereafter on December 31, 1959 (the close of the taxable year here involved), there was a debit balance in this "Loans Receivable" account of $147,264.86, representing debits to the account for payments to clients for living and sustenance costs in the amount of $194,185 (including the aforementioned $14,935.75), less credits (i.e., repayments from clients) in the amount of $46,921.10. Thereupon as of said date of December 31, 1959, all of the above-mentioned balance of $147,264.86 in said "Loans Receivable" account was transferred to one of the ledger expense accounts of "Henslee, Monek & Murray" (the reporting partnership); and it is this transferred amount which was claimed as an expense deduction on the 1959 partnership return of "Henslee, Monek & Murray." Substantially all the amounts of the payments to clients thus claimed as an expense deduction for the year 1959, were thereafter recovered when the clients' cases were settled or otherwise disposed of. Also on or about April 13, 1960, another U.S. Partnership Return of Income (Form 1065) for the calendar year 1959, was filed on behalf *187 of Martin K. Henslee and his brother Edward B. Henslee, Jr., as attorneys operating under the name of "Henslee and Henslee." This organization was, as has been stipulated, a partnership which commenced business on or about January 1, 1958 (prior to the death of Henslee, Sr.). The law practice from which the gross income reported on said partnership return was derived, and in respect of which the expenses claimed as deductions on said return were incurred, was principally that of representing railroad employees in personal injury suits under the Federal Employers Liability Act. This partnership return of "Henslee and Henslee" reported therein: Partnership gross income of $58,411.60; total deductions claimed of $208,627.66; ordinary loss of the partnership in the amount of $150,216.06; and "Partners' Shares of Income, Credits, and Deductions," as follows: Edward B. Henslee, Jr.
$ 15,000.00
Martin K. Henslee
( 165,216.06)
Total
($150,216.06)
Among the several deductions claimed on said 1959 partnership return of "Henslee and Henslee," and which were given effect in computing both the partnership loss shown therein and also petitioner Martin K. Henslee's distributive *188 share of such loss, was the following: Payments to clients for living and
sustenance costs while their cases
are awaiting trial in the courts.
Any repayments of these costs by
the clients, upon settlement of
their cases, will be reported as
income in the year of recovery
$46,940.96
Similar payments to clients had been made by said partnership of "Henslee and Henslee" during its prior accounting year 1958; but such payments had for said year been treated (as has been stipulated) as accounts receivable and were not deducted from gross income. As regards the above-mentioned payments which were made to clients in the year 1959 here involved and which were claimed as deductible business expenses of the partnership for said year, most of the same were thereafter recovered from the clients when their cases were settled or otherwise terminated. Petitioner Francis H. Monek, in the joint individual income tax return which he filed with his wife for the taxable year 1959 here involved, included as ordinary gross income from a "partnership" the amount of $60,596.46. This amount is identical with the amount of said petitioner's distributive share of the partnership net *189 income of "Henslee, Monek & Murray" as shown on the above-mentioned partnership return of said firm for the year 1959. Also, this amount exceeds the amount of said petitioner's actual withdrawals and distributions from said partnership during the year 1959 as shown on said partnership's return. Petitioner Martin K. Henslee, in the joint individual income tax return which he filed with his wife for the taxable year 1959, included as ordinary gross income and loss from "partnerships," the following: Henslee, Monek & Murray
$121,192.90
Henslee and Henslee
( 165,216.06)
Total
($ 44,023.16) These amounts are identical with the amounts of said petitioner's distributive shares of partnership net income and loss as shown in the respective above-mentioned partnership returns of said partnerships for the year 1959. Also, the above amount of said petitioner's reported partnership income from "Henslee, Monek & Murray" exceeds the amount of his withdrawals and distributions from said partnership during the year 1959 as shown on that firm's partnership return. The Commissioner of Internal Revenue, in the two notices of deficiency for the year 1959 which he issued to petitioners *190 Francis H. Monek and his wife, and to petitioners Martin K. Henslee and his wife, respectively, made the following determination and adjustments: 1. Regarding the partnership of "Henslee, Monek & Murray," he determined that the deduction of $147,264.86 which said firm claimed on its 1959 partnership return for payments made to clients for living and sustenance costs, was not allowable; and he then adjusted both the amount of said partnership's ordinary net income for said year, and also the amounts of the distributive shares thereof of petitioners Francis H. Monek and Martin K. Henslee. 2. Regarding the partnership of "Henslee and Henslee," he similarly determined that the deduction of $46,940.96 which said firm claimed on its 1959 partnership return for payments made to clients for living and sustenance costs, was not allowable; and he then adjusted both the amount of said partnership's ordinary loss for said year, and also the amount of the distributive share thereof of petitioner Martin K. Henslee. 3. Regarding the amounts of the 1959 taxable incomes of petitioner Francis H. Monek and of petitioner Martin K. Henslee as reported on the respective joint returns which they filed *191 with their wives for said year, he determined that the taxable income of each of these petitioners should be adjusted to reflect the corrected amounts of their respective distributive shares of partnership income and loss from the above-mentioned partnerships, which he had determined in the manner above stated. Based on the foregoing adjustments, and also certain other adjustments not herein contested, the Commissioner determined the deficiencies in the income taxes of the present petitioners which are here involved. II. 1. The first issue to be decided is whether, in computing the ordinary net income or loss for the year 1959 of each of the partnerships "Henslee, Monek & Murray" and "Henslee and Henslee," there should be allowed as a business expense deduction under section 162 of the 1954 Code, amounts paid out to clients for their personal living and sustenance costs while their cases were awaiting trial in the courts. It is our opinion that such deductions are not allowable. The amounts so paid out to clients were obviously in the nature of temporary advances or loans made to such clients for their own personal living and sustenance expenses; and, as hereinabove found as facts, *192 most of the amounts of such payments were thereafter recovered from the clients when their cases were settled or otherwise disposed of. These amounts, therefore, did not represent ordinary and necessary expenses of either of said partnerships in carrying on its own business, within the meaning of the above-mentioned statute. Each partnership had, in the preceding year, treated such payments on its books of account as being accounts receivable from the clients, which were not deductible; and there is no evidence herein which would tend to warrant any different treatment being accorded to the similar payments made during the taxable year here involved. Moreover, in Warren Burnett, 42 T.C. 9, affirmed as to the present question 356 F. 2d 755 (C.A. 5), both this Court and the Fifth Circuit held that payments of similar nature that had been made by a lawyer to his clients while their cases were awaiting trial in the courts, were not deductible by the lawyer as ordinary and necessary business expenses under said section 162 of the 1954 Code because they were loans or advances. To the same effect see also Reginald G. Hearn, 36 T.C. 672, affd. 309 F. 2d 431 *193 (C.A. 9), certiorari denied 373 U.S. 909. By reason of the foregoing, it is unnecessary for us to consider or pass upon the additional position of the respondent on brief, that said payments to clients were contrary to legal ethics, and therefore not deductible, in any event, on the ground that allowance of deductions therefor would be contrary to public policy. We decide this first issue in favor of the respondent. 2. The next question for decision is, in substance, whether the taxable incomes of petitioners Martin K. Henslee and Francis H. Monek as reported on the joint individual income tax returns which they filed with their wives, should be adjusted to reflect the increased amounts of their respective distributive shares of partnership income and loss from the above-mentioned partnerships, which result from the disallowance of the previously mentioned partnership deductions. Petitioners on brief appear to have limited the application of this question to their respective distributive shares of the ordinary net income of the firm of "Henslee, Monek & Murray," which they now contend was not a true partnership, at least under Illinois partnership law. We think *194 that said contention is without merit. The 1954 Code, in section 761, defines the term "partnership" to include so far as here material: [A] syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not * * * a corporation or a trust or estate. * * * This definition is broader in scope than the meaning of "partnership" under common law, and may also be broader than under a local state law. It is well settled that a partnership for Federal income tax purposes may be implied from the conduct of the parties, and may be found in the absence of a written agreement or even in some instances where the parties expressly deny their intent to form one; and also that whether or not a partnership will be recognized for Federal income tax purposes depends on all the surrounding facts and circumstances in each case. Montgomery's Federal Taxes, 38th Ed., Chap. 18-1 and 2. Also, under the 1954 Code, a partnership as such is not subject to Federal income tax; but the persons carrying on business as partners are liable for income tax only in their separate and individual capacities; *195 and such partners are required to take into account separately, their distributive shares of the partnership's ordinary net income or loss (whether or not the same is actually distributed to them). Sections 701 and 702, Internal Revenue Code of 1954. As regards the firm of "Henslee, Monek & Murray," the members thereof commenced, following the death of Henslee, Sr., to handle together the unfinished business of the personal law practice of said decedent; to maintain on a partnership basis, accounting records of the gross income, deductions and ordinary net income from the handling of such business; to report their partnership income therefrom on a U.S. Partnership Return of Income; and then, in their capacities as individual partners of said firm, to include in their separate individual taxable incomes, their respective distributive shares of the ordinary net income of said partnership, notwithstanding that the amounts so reported on their individual returns were in excess of the amounts actually withdrawn or distributed from such partnership. Also in the instant consolidated cases, it is not said partnership as such, but rather the husband-petitioners in their *196 capacities as partners who are here contesting the Commissioner's disallowance of the deduction for payments to clients, which they had claimed on their partnership return. In this situation, we hold that the firm of "Henslee, Monek & Murray" was, as reported in its said U.S. Partnership Return of Income for the calendar year 1959, a "partnership" for Federal income tax purposes; that petitioners Martin K. Henslee and Francis H. Monek were "partners" thereof for Federal income tax purposes; and that the Commissioner of Internal Revenue did not err in adjusting the amounts of "partnership income" reported on their respective individual returns, to reflect the disallowance of the above-mentioned deduction for payments to clients, which was claimed on the partnership return of income of "Henslee, Monek & Murray" for the year 1959. As regards the firm of "Henslee and Henslee" it has been stipulated that this was a partnership. We hold that Martin K. Henslee's distributive share of the 1959 net loss of said partnership, as adjusted by the Commissioner, should be included in his individual taxable income. We decide this second issue also in favor of the respondent. Decisions will *197 be entered for the respondent.