JOHN W. HERRICK AND MARY M. HERRICK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2838-73.     Filed February 27, 1975.

John W. Herrick, pro se.
*Douglas R. Fortney,* for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1969 in the amount of $15,937.92. The issues for decision are (1) whether petitioners are entitled to deduct as ordinary and necessary business expenses for the calendar year 1969 amounts advanced to the clients of one of the petitioners in connection with handling workmen's compensation and personal injury cases on their behalf, and (2) whether petitioners are entitled to deduct $4,800 claimed as entertainment expenses for the calendar year 1969.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners husband and wife, who resided in Fort Worth, Tex., at the time their petition in this case was filed, filed a joint Federal income tax return on the cash basis of accounting for the calendar year 1969. John W. Herrick (hereinafter referred to as petitioner) is an attorney licensed to practice in the State of Texas. His practice of law is largely devoted to the handling of workmen's compensation and personal injury cases in which he represents the plaintiff on a contingent fee basis. In his practice of law petitioner customarily pays expenses such as court costs, costs of depositions, and medical costs in connection with his client's case which would ordinarily be paid by the client. Petitioner's clients all come from low income groups and none of his clients would have the funds necessary to pay these costs as they are incurred or to place a deposit with petitioner for payment of these costs. The doctors with whom petitioner consults on his clients' cases or investigators who look into certain facts with respect to these cases and persons who record depositions expect to be paid promptly, and in petitioner's practice they look to him for the payment.

Petitioner on his return for the taxable year 1969 showed the following as to disbursements made by him to or on behalf of his clients during the year:

|  | Debit | Credit | Balance |
|---|---|---|---|
| Clients | $295,860.50 | $284,798.58 | $11,061.92 |
| Court cost | 4,657.58 | 5,049.67 | (392.09) |
| Medical | 21,228.73 | 13,860.08 | 7,368.65 |
| Depositions | 6,448.64 | 3,171.29 | 3,277.35 |
| Totals | 328,195.45 | 306,879.62 | 21,315.83 |

The $295,860.50 shown under the debit column designated "Clients" represents amounts petitioner disbursed to his clients during the year 1969 in settlement of cases which had been concluded. The $284,798.58 represents the amounts which petitioner received on behalf of his clients from defendants, usually insurance companies, during the year 1969. The reasons that the debits exceed the credits to the clients' account are that settlement disbursements to clients were made prior to the actual receipt of the check from the defendant or his insurance company and because some disbursements to clients were made at the end of 1969 prior to the check from the defendant or the insurance company being recorded on the books. The items of court cost, medical, and depositions represent payments which petitioner made on behalf of his clients and the amounts under these designations in the credit column represent the reimbursements which petitioner received either as a special item of court costs in the judgment against the defendant or for costs such as medical consultations which were not charged as court costs against the defendant out of the clients' portion of the judgment or settlement payment under his contingency fee arrangement. Petitioner only accepted cases which he considered meritorious and where there was a defendant responsible for his prospective client's injuries who was able to pay a recovery if obtained. Petitioner is usually successful in recovering on behalf of his clients and therefore petitioner is reimbursed approximately 95 percent of his advances to or on behalf of his clients. In those few instances where he does not make a recovery for his client he does not attempt to collect from his client the advances he has made to him or on his behalf. Because of the poor economic circumstances of petitioner's clients, such advances are usually uncollectible where no recovery is made on behalf of the client.

Petitioner occasionally would advance living expenses to some of his clients while the case was in progress or would endorse the note of the client at the bank, but none of these advances are

included in the $21,315.83 balance shown on petitioner's books in connection with disbursements made by him for his clients.

During the calendar year 1969 petitioner received gross legal fees in the amount of $225,080.73 which were recorded on his books as legal fees. From these legal fees as recorded on his books, petitioner deducted the $21,315.83 net disbursements as set forth in the schedule above and reported on Schedule C, Profit or Loss from Business or Profession, of his 1969 return as gross receipts the net amount of $203,764.90.

Respondent in his notice of deficiency disallowed this claimed deduction with the explanation that the amount "for advances made by you on behalf of your clients" was not allowable as a deduction because it did not constitute "ordinary and necessary business expenses."

Petitioner on Schedule C deducted under the designation "Travel-Promotion" an amount of $10,513.32. Of this amount, $4,800 represented sums petitioner claimed to have expended on entertainment. Petitioner kept no record of his entertainment expenses and the $4,800 deducted by him in 1969 was an estimated amount. Respondent in his notice of deficiency disallowed this amount, stating that the $4,800 "was not substantiated as required by Section 274 of the Internal Revenue Code."

### ULTIMATE FINDING OF FACT

The advances by petitioner in 1969 to or on behalf of his clients were made with the understanding that he would be repaid from the clients' portion of the recovery on the claim under the contingency fee agreement and with the reasonable expectation on the part of petitioner that he would be repaid.

### OPINION

Section 162, I.R.C. 1954,[1] provides for the deduction by a taxpayer of all ordinary and necessary expenses of carrying on a trade or business. Petitioner contends that the advances he made to or on behalf of his clients were ordinary and necessary expenses of his practice of the legal profession. The respondent takes the position that these advances were in the nature of loans by petitioner to his clients, since the advances were made by

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

petitioner with the understanding that he would be repaid by his clients for these advances when a recovery was made on behalf of the clients and that repayment would be from the clients' portion of the recovery under the contingency fee agreement that petitioner had with the client. It is respondent's position that because of the nature of the cases accepted by petitioner and under the facts here shown petitioner had a reasonable expectation of repayment of the advances which he made to or on behalf of his clients.

This case is factually not distinguishable from the case of *Adolph B. Canelo III,* 53 T.C. 217 (1969), affirmed per curiam 447 F. 2d 484 (C.A. 9, 1971). In that case we held that the advances made by an attorney handling workmen's compensation and personal injury cases on behalf of his clients, who because of their economic situation were unable to advance the funds to pay for such costs, were not deductible business expenses but were in the nature of loans which were to be repaid. In the *Canelo* case the evidence showed that the contract between the attorney and his client specifically provided that the advanced costs would be repaid out of the proceeds of a judgment or settlement in favor of the client if such judgment were obtained or settlement occurred. It further showed that the contract specifically provided that the attorney would advance the necessary court cost and expenses in the prosecution of the claim and that it was understood that if the case were lost and there was no recovery the client owed the attorney nothing either for fees or costs.

In the instant case the facts do not show the specific agreement between petitioner and his clients. The clear inference from the record is that petitioner's understanding with his clients was that the advances he made were on their behalf and that he would be reimbursed but that as a matter of practice he made no effort to collect where the case was lost and no judgment was recovered. The primary reason why he made no such effort was the practical consideration that the economic condition of petitioner's clients was such that the advances would be uncollectible. The record further shows that petitioner screened the cases he took to such an extent that he made recovery in most of his cases and that he did receive reimbursement of approximately 95 percent of all advances he made to or on behalf of his clients.

In our view there is no factual or legal distinction between this case and *Adolph B. Canelo III, supra.* In the *Canelo* case we stated (53 T.C. at 224):

"It has been firmly established that where a taxpayer makes expenditures under an agreement that he will be reimbursed therefor, such expenditures are in the nature of loans or advancements and are not deductible as business expenses." *Josef C. Patchen,* 27 T.C. 592, 600 (1956). Accord, *Levy v. Commissioner,* 212 F. 2d 552 (C.A. 5, 1954), affirming a Memorandum Opinion of this Court; *Glendinning, McLeish & Co.,* 24 B.T.A. 518 (1931), affd. 61 F. 2d 950 (C.A. 2, 1932); *Henry F. Cochrane,* 23 B.T.A. 202 (1931). The *Cochrane* case involved an attorney who claimed a deduction for expenditures essentially the same as those involved in this case: filing fees, investigation costs, and traveling expenses.

Petitioners seek to escape the rule of these cases by relying on the contingent nature of their right of reimbursement. This Court, however, has previously held that living expenses and medical expenses advanced to clients under contingent fee (and contingent reimbursement) contracts are in the nature of loans and thus not deductible under section 162(a). *Warren Burnett,* 42 T.C. 9 (1964), affirmed and remanded 356 F. 2d 755 (C.A. 5, 1966), certiorari denied 385 U.S. 832 (1966); *Reginald G. Hearn,* 36 T.C. 672 (1961), affd. 309 F. 2d 431 (C.A. 9, 1962); certiorari denied 373 U.S. 909 (1963). In our opinion those cases are not distinguishable, as petitioners suggest, as instances of mere money-lending, unrelated to the taxpayer's law practice. The plain holding of the *Burnett* case is that "petitioner's expenditures constituted advances to his clients which were virtually certain to be repaid and, consequently, were not deductible as business expenses." 356 F. 2d at 759. The Court of Appeals pointed out that the requirements of a loan for purposes of section 166 do not determine what constitutes an ordinary and necessary business expense under section 162(a). In view of petitioners' practice of screening clients and their "good hopes" of recovery, we think it is clear that the advances herein were intended to, and did, operate as loans rather than expenses under section 162(a).

Petitioner recognizes that the instant case is not distinguishable from the *Canelo* case on its facts. Petitioner argues, however, that the *Canelo* case misinterpreted the holding of the Court of Appeals for the Fifth Circuit in *Burnett v. Commissioner,* 365 F. 2d 755 (1966), affirming in part and remanding 42 T.C. 9 (1964). Petitioner argues that *Burnett v. Commissioner, supra,* held only that advances made by an attorney to his clients for living expenses were not deductible by an attorney as ordinary and necessary business expenses and that the clear import of the *Burnett* opinion was that amounts advanced for litigation expenses by an attorney to his client were deductible by the attorney as ordinary and necessary business expenses. Petitioner points out that since an appeal in the instant case would lie to the

Court of Appeals for the Fifth Circuit we should, under our holding in *Jack E. Golsen,* 54 T.C. 742 (1970), affd. 445 F. 2d 985 (C.A. 10, 1971), follow the views of the Fifth Circuit in *Burnett v. Commissioner, supra,* and hold that he is entitled to the deductions which he claimed as advances as ordinary and necessary business expenses.

We do interpret the holding of the Fifth Circuit in *Burnett v. Commissioner, supra,* to be "squarely in point" with the issue in the instant case and as we pointed out in the *Golsen* case, at page 757:

it is our best judgment that better judicial administration requires us to follow a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of Appeals and to that court alone. [Fns. omitted.]

The clear inference from this statement is that if the appeals court case is not squarely in point we must decide the issue presented as we consider proper with due regard to the holdings of this Court in other cases as well as the applicability of the appeals court cases to the facts of the case under consideration. In our view the Fifth Circuit in *Burnett v. Commissioner, supra,* held that where an attorney made expenditures which constituted "advances to his clients which were virtually certain to be repaid" the amounts were not deductible as business expenses. After reaching this conclusion the Fifth Circuit pointed out that the disbursements made by the taxpayer in that case to his clients for living expenses were made with the expectation that they would be substantially repaid and that fact, coupled with the high actual rate of recovery of these advances, supported this Court's characterization of the disbursements as advances virtually certain to be repaid rather than deductible business expenses. The court then pointed out that the taxpayer in the Tax Court had offered testimony in an effort to show that certain of his expenditures which had been excluded from the proceeds of the judgment obtained on behalf of his clients were deductible business expenses and not advances to the clients but that the Tax Court had refused to consider this evidence. The case was remanded with the following statement (356 F. 2d at 760):

The other issue raised by this appeal is whether petitioner's contention that sums aggregating $24,562.42, representing amounts paid for court costs in preparing clients' cases for trial, and $10,292, representing amounts paid to clients' creditors from proceeds recovered in their behalf, were inadvertently included in the $50,417.18 claimed as a business expense deduction for advances

to clients, was properly dismissed by the Tax Court as without factual support and as contrary to the stipulation of the parties? * * *
   * * *
* * * Thus, while we agree that no deduction should be allowed for the advances to petitioner's clients, we remand this case to the Tax Court with the direction that it hear such evidence as is available concerning petitioner's claims (a) that he expended money for court costs and made payments to clients' creditors out of recovery proceeds, and (b) that such payments qualify as deductible expenses under Section 162(a) of the Internal Revenue Code of 1954.

In our view the Court of Appeals for the Fifth Circuit did not hold in *Burnett v. Commissioner, supra,* that court costs and other litigation expenses which normally would be paid by the clients were deductible business expenses when paid on behalf of the clients by the attorney with the understanding that the clients would repay the attorney for the advances. We do not agree with petitioner that any inference may properly be drawn from the remand of the case by the Fifth Circuit that it would so hold. The case was remanded for this Court to determine whether in fact any items which the taxpayer claimed to be deductible business expenses for costs of litigation were in fact deductible. If the attorney had included in his income recovery proceeds which had in fact been paid out as court costs, a situation might exist which would entitle the attorney to a deduction. In our view the clear inference of the Fifth Circuit's opinion in the *Burnett* case is that if the amounts deducted were advances by the attorney to his clients whether for living expenses or other expenses normally paid by the clients and there was an agreement or understanding that the attorney would be repaid, the advances were in the nature of loans and were not deductible business expenses.

We sustain respondent's determination that petitioner is not entitled to deduct the advances made to his clients as ordinary and necessary business expenses.

We also sustain respondent's disallowance of the $4,800 deducted by petitioner as entertainment expenses. Section 274(d) provides that no deduction shall be allowed for any item with respect to an activity of a type generally considered to constitute entertainment unless the taxpayer substantiates by adequate records or sufficient evidence corroborating his own statement the amount of the expense, the time and place of the entertainment, the business purpose of the expense, and the business relationship of the persons entertained to the taxpayer. In the

instant case, the only evidence offered to support the claimed deduction of $4,800 for entertainment expense is petitioner's uncorroborated testimony that he estimated the $4,800 to be the amount he expended for entertaining in his home doctors and other persons through whom clients might be referred to him. This evidence does not meet the requirements of the statute for substantiation of entertainment expenses in order for those expenses to be deductible as a business expense of petitioner's practice of law. *Wm. Andress, Jr.,* 51 T.C. 863 (1969), affirmed per curiam 423 F. 2d 679 (C.A. 5, 1970).

*Decision will be entered for the respondent.*